[L. A. No. 14832. In Bank.—December 18, 1934.]

LLEWELLYN F. MARSH, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

76

Llewellyn F. Marsh, *in pro: per.,* for Petitioner.

Philbrick McCoy for Respondent.

PRESTON, J.—This proceeding was instituted to review an order of the board of governors of The State Bar of California, adopting findings of the local administrative committee, and recommending to this court the suspension of petitioner from the practice of the law for a period of three years.

Petitioner was admitted to practice in this state in May, 1917, and is now about 38 years old. From time to time his dilatory tactics have antagonized clients to such an extent that they have lodged complaints against him, but few of which, however, have proceeded to formal hearing.

About February 1, 1933, petitioner received at Los Angeles a letter from Mr. Chas. J. Soderbery, a resident of Coronado, asking him to accept employment to secure an annulment of the marriage of Mr. Soderbery's minor son. An early termination of the marriage was desired because the obtainment of a school teaching position by the wife

depended upon her resuming her maiden name. On February 4th petitioner replied accepting the employment, naming a fee of $75 and $12 costs, 50 per cent thereof payable in advance, and stating that the "matter if started immediately could ordinarily be completed within approximately two weeks time".

On February 7, 1933, Mr. Soderbery sent petitioner a check for $50 on account and gave him all necessary information to enable him to proceed with the annulment. However, during ensuing months, despite continuous demands, petitioner neglected and refused to perform his duties under said employment or to advise Mr. Soderbery as to the status of the matter, except that once, during the month of March, he called at Mr. Soderbery's office and misrepresented to him that he. would at once prepare papers for taking the son's deposition and that the reason the action had not then been begun was that the "bank holiday had closed the courts". About May 17, 1933, Mr. Soderbery discharged petitioner, asked for a return of his money, and employed new counsel, who procured the annulment. Petitioner then neglected to return the $50. Repeated efforts to reach him were unavailing. Finally, on December 9, 1933, after this proceeding had been instituted and set for hearing, petitioner visited Mr. Soderbery at Coronado, apologized to him and refunded said sum.

Petitioner's attitude throughout this hearing was highly apologetic. He said that when he noted the marriage in question had taken place in Arizona, "legal complications" came to his thought and he did not know how to proceed; that he had been very busy with other matters and ill a portion of the time. At the conclusion of the hearing Mr. Soderbery said that he was satisfied with petitioner's apology and the return of his money and that he did not wish to see petitioner punished as he felt he had learned his lesson.

From these facts the local administrative committee concluded that petitioner was guilty of acts involving moral turpitude, dishonesty and corruption (subd. 5, sec. 287, Code Civ. Proc.), and of violation of his oath and duties as an attorney. (Subd. 2, sec. 287, Code Civ. Proc.) It further found that on September 24, 1930, in another disciplinary proceeding where the facts were similar to those

here shown, this court ordered petitioner's suspension from practice for one year (*Marsh* v. *State Bar*, 210 Cal. 303 [291 Pac. 583]) and that petitioner there presented the same defense of "negligence" as pleaded here, which defense is without merit. The committee quoted from said reported case the following remarks of one of the members of the board of governors of The State Bar: "A review of the facts of these three cases under consolidation would indicate that the respondent is at least a careless and 'sloppy' practitioner, and that his negligence borders very closely upon moral turpitude. This type is not safe to represent clients in the practice of the law, particularly implicated, as he seems to be, in constant trouble with his clients over money matters, delays and actual misrepresentation." (*Marsh* v. *State Bar, supra,* p. 306.)

The committee further found that the above comments were as applicable to the present proceeding as to the former "except as to the discipline recommended, which, in view of respondent's former record, should be greater". It therefore recommended petitioner's suspension for a period of three years, as aforesaid.

Petitioner contends that the present record, considered without reference to his prior wrong-doing, falls far short of showing facts sufficient to justify his suspension, and certainly not a three-year period of suspension. He asserts that he has already suffered full punishment for the former wrong-doing and should not now be punished a second time for it, as contemplated by the recommendation made. The State Bar replies that the court must consider its opinion in the earlier proceeding, which characterizes petitioner's misrepresentations to his clients as "outright dishonesty", and therefore the proposed penalty is just.

This situation requires us to declare to what extent and for what purposes prior disciplinary proceedings will be considered by this court, particularly when incorporated in the findings and recommendation as in this record.

It must first be noted that although the word "punishment" is frequently used, the discipline of an attorney is not punitive in character. " 'This court has uniformly treated disbarment proceedings as peculiar to themselves, and governed exclusively by the code sections specifically covering them.' (*Matter of Danford,* 157 Cal. 425 [108

Pac. 322].) The purpose of such a proceeding is to determine the fitness of an officer of the court to continue in that capacity, and it has been said the disbarment of attorneys is not intended for the punishment of the individual but for the protection of the courts and the legal profession." (*In re Vaughan*, 189 Cal. 491, 496 [209 Pac. 353, 24 A. L. R. 858], quoted with approval in *Fish* v. *State Bar*, 214 Cal. 215, 222 [4 Pac. (2d) 937]; see, also, 1932 Cal. Jur. Supplement, p. 71, of article on The Practice of Law, sec. 38.)

█ The penalty being designed not to punish the individual but to protect the public, the courts, and the legal profession, is it not clear that, in order to fulfill such purpose, the prior record of an attorney must be taken into consideration in determining his fitness to continue in practice? If the prior attempt at discipline has been ineffective to cure the evil, as witness the fact that the same offense has been repeated, then such further penalty should be imposed as will tend to either effect the reformation of the offender or else remove him entirely from the practice. Thus, although the penalty for a repeated offense may be much greater than would have been imposed were it a first offense, such increased penalty is not a "meting out" of further punishment for prior acts, as contended by petitioner, but is an adjudication of the attorney's fitness to continue in practice.

█ It is well established that mitigating circumstances may be considered in determining the punishment to be imposed in disciplinary proceedings, such as the motives and purposes which actuated the accused, his previous good record, his characteristics and nature, testimonials as to his good character and reputation, or his youth and inexperience and the fact that he was not guilty of intentional wrong-doing. (*Barbee* v. *State Bar*, 213 Cal. 296 [2 Pac. (2d) 353]; *Dahl* v. *State Bar*, 213 Cal. 160 [1 Pac. (2d) 977]; *Mills* v. *State Bar*, 211 Cal. 579 [296 Pac. 280, 297 Pac. 19]; *In re Petersen*, 208 Cal. 42 [280 Pac. 124]; *In re Sadicoff*, 208 Cal. 555 [282 Pac. 952]; *In re McCowan*, 177 Cal. 93 [170 Pac. 1100]; 1932 Cal. Jur. Supplement, Article on The Practice of Law, p. 102, sec. 65, and pp. 114, 115, sec. 78, and many cases cited.)

If such mitigating circumstances may be considered in alleviating or lightening the penalty, does it not follow that

incriminating circumstances, such as the previous poor record of an accused, his years of practice, knowledge of wrong-doing, repeated misconduct, etc., may likewise be considered in determining whether or not a more severe penalty should be imposed? The fact that an offense is a repetition of offenses for which an accused has previously been disciplined shows that the wrong is not unintentional but is done deliberately with knowledge that such conduct is forbidden and thus it merits a greater penalty.

In the instant case, considering the many complaints lodged against petitioner over a period of years, it would seem that he has continuously neglected to avail himself of the opportunity to mend his ways.

It is therefore ordered that petitioner herein, Llewellyn F. Marsh, be and he is hereby suspended from the practice of law in this state for the period of three years from and after the date of filing of this order.

Curtis, J., Shenk, J., Langdon, J., Waste, C. J., and Seawell, J., concurred.